IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES G. DAVIS** | * | |
| **CONSTRUCTION CORPORATION** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 12-2715 PJM |
| | * | |
| **ERIE INSURANCE EXCHANGE** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

James G. Davis Construction Corporation ("Davis") is a Virginia corporation with its principal place of business in Maryland. Erie Insurance Exchange ("Erie") is a commercial insurance provider formed as an unincorporated association in Pennsylvania.[1] Davis has sued Erie for breach of contract arising out of Erie's refusal to pay the costs of Davis's legal defense in a tort lawsuit filed against it in Maryland state court. Davis also requests a declaratory judgment that it is entitled to attorneys' fees and indemnification. Erie has filed a Motion to Dismiss (Paper No. 5) for lack of subject matter jurisdiction. For the reasons that follow, the Motion is **GRANTED**.

I.

A party may move to dismiss a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion places the district court in the role of a fact finder for the limited purpose of assessing disputes over allegations critical to establishing subject matter jurisdiction. When the movant contests the truth of the complaint's jurisdictional allegations, the district court may "go beyond the

---

[1] The First Amended Complaint alleges that "Erie is a Pennsylvania corporation engaged in the commercial insurance business," but at oral argument and in its papers, Davis through counsel acknowledged that Erie is an unincorporated association formed in Pennsylvania.

1

allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The district court may review pleadings, affidavits, depositions, and even hear testimony, all without converting the 12(b)(1) motion into one for summary judgment. *Id.* The burden of proving subject matter jurisdiction is upon the plaintiff. *Id.*

In contrast, when a Rule 12(b)(6) motion is filed, the plaintiff has procedural advantages not present in the Rule 12(b)(1) context: "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The court's inquiry is restricted to the pleadings, and courts must attach "a presumption of truthfulness" to the plaintiff's jurisdictional allegations. *Id.* at 193.

In its apparent haste to submit its Motion, Erie failed to specify its procedural line of attack, stating only that it moves pursuant to Rule "12(b)." The Court's review of the pleadings, however, suggests that Erie intended to submit its Motion pursuant to Rule 12(b)(1) since Erie disputes Davis's key jurisdictional allegation that Erie is a "corporation," and offers evidence pertaining to the nature and location of its business. For its part, Davis has submitted information it learned about Erie from the Maryland State Department of Assessments and Taxation. The Court, therefore, analyzes Erie's Motion as made pursuant to Rule 12(b)(1).

II.

Federal district courts have original jurisdiction in all civil actions where the amount in controversy exceeds $75,000 and the adverse parties are "diverse," *i.e.*, citizens of different States. 28 U.S.C. § 1332. Diversity of citizenship must be "complete," meaning that "no plaintiff may be a citizen of the same state as any defendant." *Ware v. Jolly Roger Rides, Inc.*, 857 F.

Supp. 462, 463 (D. Md. 1994) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). For purposes of determining a party's citizenship, a natural person is deemed a citizen of the State in which he or she is domiciled, *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998), a corporation is deemed a citizen "of any state in which it is incorporated or has its principal place of business," *Ware*, 857 F. Supp. at 463, and an unincorporated association is deemed a citizen of any state in which it its "members" are citizens, *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93 (4th Cir. 1983).

The parties agree that Erie is an unincorporated association, and that "[a]s an unincorporated association, a reciprocal insurance exchange is considered to have the citizenship of its members for diversity purposes in federal court." *True v. Robles*, 571 F.3d 412, 422 n.2 (5th Cir. 2009).

The jurisdictional dispute in this case turns on a single question: Who are Erie's "members"? Erie argues that its members are its policyholders and, because it has policyholders in both Virginia and Maryland, Erie has common citizenship with Davis. Complete diversity, says Erie, is therefore lacking.[2]

Davis asserts that Erie's citizenship is its state of formation which, in this case, is Pennsylvania,. While Erie may have *policyholders* in Virginia and Maryland, Davis contends that the policyholders are not Erie's "members" for purposes of establishing diversity jurisdiction; instead, the policyholders are merely Erie's "customers."

This question has split federal judges in this District and beyond. On the one hand, now retired-Judge Benson Everett Legg has held that "Erie's individual policyholders are its customers, not its members." *Erie Insurance Exchange v. Davenport Insulation, Inc.*, 616 F.

---

[2] Erie also argues that diversity jurisdiction is lacking because there is no amount in controversy asserted in the First Amended Complaint. This argument, while not fatal to Davis because it is easily curable, is a moot point, given the Court's resolution of Erie's Motion on other grounds.

Supp. 2d 578, 580 (D. Md. 2009).³ On the other hand, then-District Judge (now Fourth Circuit Judge) Andre Davis has held that Erie's policyholders *are* its members, *Hiob v. Progressive Am. Ins. Co.*, 2008 WL 5076887, at *1 (D. Md. Nov. 24, 2008), as has Judge William Quarles, *Brunson v. Erie Insurance,* 2013 WL 1316947 (D. Md. Mar. 27, 2013). The U.S. Court of Appeals for the Fourth Circuit has yet to weigh in on this issue.

This Court holds that Erie's members include its policyholders, hence complete diversity of citizenship between Davis and Erie's members is required before federal jurisdiction will obtain.

Some background about reciprocal insurance exchanges is in order. A reciprocal insurance exchange is an unincorporated association of persons or entities, referred to as "subscribers," who exchange risks among themselves. 1 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 1.08[4][e]. The goal of the exchange is for an individual or entity to obtain insurance by entering into a pool of subscribers who all agree to insure one another, subject to certain conditions. Thus, in a reciprocal insurance exchange, "[e]ach subscriber is *both* an insurer and an insured." Michael A. Haskel, *The Legal Relationship Among A Reciprocal Insurer's Subscribers, Advisory Committee and Attorney-in-Fact*, 6 N.Y. CITY L. REV. 35 (2003) (footnotes omitted) (emphasis added). The subscribers assume liability severally, "meaning that the liability of each member is limited to the premiums paid by that member." Appleman, *supra*, § 1.08[4][e]. If a subscriber defaults on his or her premium payments, the other subscribers "cannot be charged with a portion of the liability of the defaulting subscriber." *Id.* The association is not operated for profit, but acts "through a person or corporation serving as

---

³ Judge Legg relied on the reasoning of an opinion of another federal district court. *See Garcia v. Farmers Insurance Exchange*, 121 F. Supp. 2d 667, 669 (N.D. Ill. 2000) ("The subscribers or policyholders are its customers, not its members. I do not become a member of a business association merely be entering into a contractual relationship with it for the purchase of goods, services, or insurance protection.").

4

attorney-in-fact for the organization." *Id.* Although the powers of the attorney-in-fact may vary from exchange to exchange, the role is largely administrative. Haskel, *supra*, at 48–49.

This background, in the Court's view, demonstrates why Davis' analysis is more persuasive than Judge Legg's analysis. In a reciprocal insurance exchange, there is no distinction between policyholders (or "customers") and insurers (or "underwriters"). Indeed, one of the key identifying components of a reciprocal insurance exchange is that all of the policyholders are also providers of insurance to each other (or "subscribers"). Thus, "when a disgruntled policyholder sues the reciprocal, he is suing not so much the entity as he is his fellow individual members of that entity." *Baer v. United Services Automobile Association*, 503 F.2d 393, 395 n.3 (2nd Cir. 1974).

Davis persists, arguing that Maryland statutory law and a case from the U.S. Court of Appeals for the Fifth Circuit, *Royal Insurance Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877 (5th Cir. 1993), establish that Erie's underwriters are its members, not its policyholders. The Court cannot agree.

Davis' reliance on Maryland state law is a non-starter. Assuming that "state law might give an unincorporated association the capacity to sue or be sued as an entity, the citizenship of each of the members must still be considered for diversity purposes in federal court." *Lumbermen's Underwriting Alliance v. Mobil Oil Corp.*, 612 F. Supp. 1166, 1169 (D. Idaho 1985). In particular, the contention that an entity such as Erie, an unincorporated association, is only a citizen of the state where it is incorporated has long been rejected by federal courts. *See Arbuthnot v. State Automobile Insurance Association*, 264 F.2d 260, 261–62 (10th Cir. 1959)

(rejecting argument that unincorporated reciprocal or inter-insurance exchange is a citizen of the state in which it is incorporated).[4]

*Royal* is distinguishable because it involved a Lloyd's plan, which is different than a reciprocal insurance exchange. *See* Appleman, *supra*, § 1.08[4][e] (warning that a reciprocal insurance exchange is "[n]ot to be confused with the Lloyd's model of 'insurance exchange'"). In a Lloyd's plan, there is a clear distinction between the policyholders and the underwriters. *See id.* at 882 ("Under the Lloyd's plan, the insured typically obtains insurance from one or more members of the Lloyd's group [of underwriters]; each member accepts responsibility for a portion of the risk, and liability among the members is several but not joint."). But that distinction between policyholders and underwriters falls apart in a reciprocal insurance exchange, where the "participants, called subscribers *(or underwriters)* are both insurers and insureds; for their mutual protection, they exchange insurance contracts through . . . an attorney-in-fact." *Industrial Indemnity Co. v. Golden State Co.*, 256 P.2d 677, 680 (Cal. Dist. Ct. App. 1953) (emphasis added). "Underwriter" is synonymous with "insurer."

Davis' angst seems to derive from the perception that Erie has found a way to evade federal diversity jurisdiction by relying on the artifice of the unincorporated association. To be sure, its frustration is shared by some members of Congress, who have proposed, to date unsuccessfully, modifying the diversity jurisdiction statute to capture entities the likes of Erie:

> This rule "has been frequently criticized because often an unincorporated association is, as a practical matter, indistinguishable from a corporation in the same business." Some insurance companies, for example, are "inter-insurance exchanges" or "reciprocal insurance associations." For that reason, federal courts have treated them as unincorporated associations for diversity jurisdiction purposes. Since such companies are nationwide companies, they are deemed to be citizens of any state in which they have insured customers. Consequently, these companies can never be completely or even minimally diverse in any case. It

---
[4] Davis' reliance on Maryland state law is also curious, given that both sides agree that Erie is formed under and regulated according to Pennsylvania law.

makes no sense to treat an unincorporated insurance company differently from, say, an incorporated manufacturer for purposes of diversity jurisdiction. New subsection 1332(d)(10) corrects this anomaly.

S<small>ENATE</small> J<small>UDICIARY</small> C<small>OMMITTEE</small>, R<small>EPORT ON</small> T<small>HE</small> C<small>LASS</small> A<small>CTION</small> F<small>AIRNESS</small> A<small>CT OF</small> 2005, S. R<small>EP</small>. N<small>O</small>. 109-14, at 46 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 43. Be that as it may, until some such modification is enacted as law, this Court cannot find diversity as a basis for exercising its jurisdiction over this case or comparable cases.

The Motion to Dismiss (Paper No. 5) is **GRANTED**. A separate Order shall issue.

<br>

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**May 17, 2012**